UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTINA COPELAND-STEWART,

      Plaintiff,

v.                                CASE NO. 8:15-cv-159-T-23AEP

NEW YORK LIFE INSURANCE
COMPANY,

      Defendant.

_____/

## ORDER

      Under the Fair Labor Standards Act (FLSA), Christina Copeland-Stewart sues (Doc. 1) New York Life Insurance Company.  Copeland-Stewart worked for New York Life "as a customer service representative and sales agent in the AARP Life Member Services cost center."  (Doc. 47 at 1)  The complaint alleges that New York Life "failed to properly pay [Copeland-Stewart] and all other similarly situated employees complete overtime compensation."  (Doc. 1 at 4)  After Copeland-Stewart initiated this action, eighteen current and former New York Life employees filed notices "of consent to join" this action as "similarly situated" plaintiffs.[1]  (*See, e.g.*, Doc. 10)

---

[1] This order will describe the eighteen persons who filed notices "of consent to join" as the "present opt-in plaintiffs."

After a court-ordered mediation, Copeland-Stewart and New York Life agreed "to resolve this matter on a collective class-wide basis for a maximum settlement amount up to $1,075,000."[2]  (Doc. 47 at 5)  The eighteen present opt-in plaintiffs will participate in the proposed settlement.  (Doc. 47-1 at 1)  Also, the parties plan to notify and offer other current and former New York Life employees the option of opting into this action and joining the proposed settlement.[3]  (Doc. 47-1 at 4, 5–6)

Copeland-Stewart and New York Life move (Doc. 47) for "certification" of this action "as a collective action"; for approval of the proposed settlement; for appointment of Copeland-Stewart as "class representative"; for appointment of Copeland-Stewart's counsel, C. Ryan Morgan, as "class counsel"; for approval of a $322,500 attorney's fee award to Morgan; for approval of service awards (totaling $27,500) to Copeland-Stewart and the present opt-in plaintiffs; and for approval of a proposed notice to the putative class members about the right to opt into this action and to join the proposed settlement.

---

[2] The proposed settlement class comprises the "current and former employees of New York Life in the AARP Life Member Services cost center/division of its Tampa call center location who were employed between April 13, 2012 and October 17, 2015." (Doc. 47 at 2)

[3] This order will describe the persons who meet the motion's definition of the proposed settlement class as the "putative class members." This order will describe the persons who have not — but will — opt into this action and join the proposed settlement as the "future opt-in plaintiffs."

## DISCUSSION

### 1. Class Certification

Under 29 U.S.C. § 216(b), an FLSA action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." The FLSA permits collective actions by multiple plaintiffs and "contains its own procedural requirements for the litigation of claims of multiple plaintiffs." Ellen C. Kearns, *The Fair Labor Standards Act*, Vol II, 19-7 (2d ed. 2010).

"To maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007) (internal quotation marks omitted). "Courts commonly use a two-stage analysis to make the determination of whether employees are similarly situated so that the case may proceed to trial as an opt-in collective action, although this approach is not mandated." Kearns at 19-15; *accord Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008).

At the first stage, which is known as conditional certification, the "trial court makes the determination whether notice of the action should be given to potential opt in plaintiffs and whether the case should initially proceed as a collective action." Kearns at 19-17. "In determining whether conditional certification is proper, the Court must ascertain 1) whether there are other employees who desire to 'opt-in,' and

2) whether these other employees are 'similarly situated' with respect to their job requirements and pay provisions." *Kubiak v. S.W. Cowboy, Inc.*, 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014) (Howard, J.).  The party seeking certification "has the burden of showing a reasonable basis for his claim that there are other similarly situated employees," but the burden is "fairly lenient."[4]  *Morgan*, 551 F.3d at 1260–61.

Ignoring the typical two-stage procedure for class certification, the motion ambiguously requests "that this action be certified as a collective action under the Fair Labor Standards Act for settlement purposes only."  (Doc. 47 at 2, 17)  The motion fails to comply with Local Rule 3.01(a), which requires a motion to include a statement of the basis for the precise relief requested and a memorandum of legal authority in support of the request.  To the extent that the motion seeks conditional certification of the proposed class, the motion fails to offer any information showing that the typical putative class member is similarly situated to Copeland-Stewart "with respect to . . . job requirements and pay provisions." *Kubiak*, 2014 WL 2625181, at *8.  Thus, Copeland-Stewart and New York Life fail to meet even the "fairly

---

[4] At the second stage, which typically occurs after the close of discovery, "the court makes the determination of whether the case should continue to be certified as a collective action for trial." Kearns, 19-17–19-18. The "district court has a much thicker record [at the second stage] than it had at the [conditional certification] stage, and can therefore make a more informed factual determination of similarity. This second stage is less lenient, and the plaintiff bears a heavier burden." *Morgan*, 551 F.3d at 1261 (internal citations omitted).

lenient" burden of showing "a 'reasonable basis' for [the] claim that there are similarly situated employees." *Morgan*, 551 F.3d at 1260–61.

## 2. Proposed Settlement

"Settlement of an FLSA action requires review and approval by the district court or the Department of Labor." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010); *accord Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1237 (M.D. Fla. 2010) ("[R]elease of an FLSA claim approved by neither the Department of Labor nor the district court remains unenforceable."). In reviewing a proposed settlement of an FLSA claim, a court must evaluate whether the proposed settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). Because this court cannot yet fully and adequately determine whether the proposed settlement is fair and reasonable, final approval of the proposed settlement is premature. How many plaintiffs will opt into this action is unclear. Further, the proposed settlement fails to explain the claim of the typical putative class member. *See Perez v. Avatar Properties, Inc.*, 2008 WL 4853642, at *4 (M.D. Fla. 2008) (Baker, Mag. J.) (adopted by Antoon II, J.) ("Here, however, the parties have put the proverbial cart before the horse in settling all [FLSA] claims, before the representative plaintiff has any indication as to exactly what those claims are and how many others he will actually represent.").

- 5 -

Finally, Copeland-Stewart has no authority yet to settle the future opt-in plaintiffs' claims.  In an "FLSA action, unlike in a Rule 23 class action, a named plaintiff can represent others only when they affirmatively opt-in to the case." *Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 708 (11th Cir. 2014).  If a named plaintiff "has no independent right to represent others that have yet to appear," the named plaintiff "has no authority to settle their as yet unasserted claims." *Perez*, 2008 WL 4853642, at *3.  Thus, before the future opt-in plaintiffs actually opt into this action, Copeland-Stewart has neither the authority to represent the future opt-in plaintiffs nor the authority to settle their FLSA claims.

### 3. Class Representative and Class Counsel

Copeland-Stewart and New York Life move to appoint Copeland-Stewart as "class representative" and Morgan as "class counsel."  (Doc. 47 at 17)  The motion again violates Local Rule 3.01(a) by failing to include a statement of the basis for the precise relief requested and a memorandum of legal authority in support of the request.  Further, as noted previously, the motion fails to demonstrate that the typical putative class member is similarly situated to Copeland-Stewart.  Without the demonstration, the court cannot appoint Copeland-Stewart as "class representative" or Morgan as "class counsel."

**4. Attorney's Fee Award and Service Awards**

The "FLSA requires judicial review of the reasonableness of counsel's legal fees." *Silva v. Miller*, 307 Fed. Appx. 349, 351–52 (11th Cir. 2009) (per curiam). The motion requests an attorney's fee award to Morgan in the amount of $322,500, which is 30% of $1,075,000, the maximum settlement amount.[5] (Doc. 47 at 13; Doc. 47-1 at 3–4, 7) For "their efforts in achieving this class resolution on behalf of the absent Putative Collective Class Members," the motion requests "a service award of $5,000.00" to Copeland-Stewart and "service awards of $1,250.00 each" to the eighteen present opt-in plaintiffs.[6] (Doc. 47 at 12)

Without "knowing the size of the collective class — or whether there will even be a class — any request for approval [of the awards] at this juncture is premature." *Leigh v. Bottling Group, LLC*, 2011 WL 1231161, at *5 (D. Md. Mar. 29, 2011) (Chasanow, J.). However, "a word of caution . . . [is] in order." *Leigh*, 2011 WL 1231161, at *5. Under the proposed settlement, after subtracting the attorney's fee award and the service awards from the maximum settlement amount, $725,000 remains to pay the claims of the putative class members. However, this $725,000 is "reversionary"; unless every putative class member joins the proposed settlement, a

---

[5] The motion fails to discuss the work performed by Morgan or how that work might justify a $322,500 attorney's fee award.

[6] The sum of the proposed service awards is $27,500.

portion of the $725,000 will revert to New York Life.[7]  (Doc. 47-1 at 3–4, 7, 8–10)  If

a large portion of the $725,000 reverts to New York Life, a $322,500 attorney's fee

award would be unreasonable.  *See Leigh*, 2011 WL 1231161, at *5 ("Plaintiffs'

counsel is requesting approximately one-third of the amount of the maximum

possible value of the settlement fund, apparently without regard to the size of the

collective class or the actual work performed on its behalf.  While it remains to be

seen whether a percentage of the fund award, rather than a lodestar amount, is

appropriate in this case, the amount requested would clearly be subject to a

reasonableness standard.").

**5. Notice**

Because Copeland-Stewart and New York Life fail to demonstrate that the

typical putative class member is similarly situated to Copeland-Stewart, review of the

proposed notice to the putative class members is premature.  However, one issue

demands a brief discussion.  The proposed notice provides a general formula for

calculating the distributions to the future opt-in plaintiffs but omits the specific

amount of the attorney's fee award ($322,500) and of the service awards (totaling

$27,500).  (Doc. 47-3 at 4)  A notice to the putative class members must explicitly

state (1) the amount of the proposed attorney's fee award and (2) the amount and

---

[7] "In a reversionary settlement, the defendant agrees to a certain amount of money from which the opt-in members will receive their share. Any monies that are not claimed from the settlement amount" revert to the defendant. Kearns at 19-205.

Case 8:15-cv-00159-SDM-JSS   Document 48   Filed 01/19/16   Page 9 of 10 PageID 298

recipient of each proposed service award.  *See Santiago*, 2008 WL 4822894, at *8 ("[T]he Notice should fully inform the class members of the total common fund settlement, including the agreed upon attorneys' fees and costs, the administrative costs and the proposed settlement payment to Santiago.").

## CONCLUSION

Accordingly, the parties' motion (Doc. 47) for "approval of FLSA collective action settlement" and for other relief is **DENIED**.  No later than **FEBRUARY 12, 2016**, the parties (1) must seek preliminary approval of a proposed class settlement, (2) must seek final approval of a proposed settlement as to only Copeland-Stewart and the present opt-in plaintiffs, (3) must announce that the parties abandoned the proposed settlement and move for conditional certification, or (4) must announce that the parties abandoned the proposed settlement and proceed with Copeland-Stewart as the only plaintiff.

If the parties choose to seek preliminary approval of a proposed class settlement, the parties (1) must revise the motion, the proposed settlement, and the supporting documents in compliance with this order and with Local Rule 3.01(a); (2) must move for conditional certification of the proposed settlement class; (3) must move for preliminary approval of the proposed settlement, the attorney's fee award, and the service award; and (4) must move for approval of a notice to the putative class members.  If an order grants those requests, the order will direct the parties to

- 9 -

send the approved notice to the putative class members in accord with the proposed settlement (*see* Doc. 47-1 at 5–6).  At the end of the period during which the putative class members may opt into this action and may join the proposed settlement, the parties must move for final approval of the proposed settlement, the attorney's fee award, and the service awards.

ORDERED in Tampa, Florida, on January 19, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE